**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JOSE SOTO,                                      :
                                                :
                        Petitioner,             :
                                                :          Civil Action No. 04-2108 (JAG)
           v.                                   :
                                                :              **O P I N I O N**
                                                :
UNITED STATES OF AMERICA,                       :
                                                :
                        Respondent.             :
                                                :

**GREENAWAY, JR., U.S.D.J.**

     Petitioner Jose Soto ("Petitioner") has filed the instant motion to vacate his sentence,

pursuant to 28 U.S.C. § 2255 ("§ 2255").[1]  Petitioner contends that his sentence should be

vacated for three primary reasons.  First, Petitioner asserts that this Court erred by failing to

instruct the jury that, under 18 U.S.C. § 924(c), an essential element of the offense of carrying a

machine gun, in furtherance of a violent crime, is that the defendant have knowledge of the

---

[1] 28 U.S.C. § 2255 provides, in pertinent part:

    A prisoner in custody under sentence of a court established by Act of Congress
    claiming the right to be released upon the ground that the sentence was imposed in
    violation of the Constitution or laws of the United States, or that the court was
    without jurisdiction to impose such sentence, or that the sentence was in excess of
    the maximum authorized by law, or is otherwise subject to collateral attack, may
    move the court which imposed the sentence to vacate, set aside or correct the
    sentence.

nature of the weapon in his possession.  Second, Petitioner contends that the testimony of a

certain witness was secured in violation of 18 U.S.C. § 201(c)(2) and New Jersey Rule of

Professional Conduct 3.4(b), and that this Court erred by failing to suppress that testimony.

Third, Petitioner claims that he was deprived of his Sixth Amendment right to counsel as a result

of his counsel's ineffective assistance.  For the reasons set forth below, Petitioner's motion is

denied.

## **FACTUAL BACKGROUND**[2]

On July 19, 1997, Charles Rodriguez and his brother, Joseph, along with one or two other

males, masked and armed, entered the Corestates Bank in Woodlynne, New Jersey.  Although

they were unable to gain access to the bank vault, they emptied the tellers' cash drawers, and

stole approximately $64,039.  The surveillance cameras at Corestates Bank captured the robbers

carrying guns that appeared to be assault rifles.  The robbers fled in a stolen car, drove to a vacant

lot, where they set the getaway car on fire, and escaped in a second car.  The Rodriguez brothers

were convicted at trial before this Court for the robbery.

On May 23, 1998, the Rodriguez brothers, along with another male, entered the

Commerce Bank in Moorestown, New Jersey.  One of the men used an M16 assault rifle to take

money from the tellers.  They were unable to access the bank vault, but stole approximately

$15,373 from the teller stations at the drive-through window and inside the bank.  A surveillance

camera recorded the robbery.  When the men had mechanical problems with their getaway car,

---

[2] Unless otherwise indicated, this Court relies on the unpublished opinion of the Third
Circuit Court of Appeals, which was filed when Petitioner sought direct review of his conviction
and sentence, for the relevant facts.  The opinion of the Court of Appeals is attached at Exhibit D
to Respondent's brief.

they carjacked the automobile of a bank employee, who had arrived at the scene as they were leaving.  They abandoned the car less than a mile from the bank.

In August of 1998, the Federal Bureau of Investigation ("FBI") was trying to locate a fugitive, Charles Rodriguez.  Fernando Flores, a former police officer and cousin of the Rodriguez brothers, agreed to assist the FBI in a sting operation designed to capture Charles.  At the FBI's instruction, Flores informed the Rodriguez brothers of an opportunity to rob an armored car that supplied cash to automated teller machines at the Walt Whitman rest stop on the New Jersey Turnpike.  Joseph told Flores that he and Charles would participate in the robbery.  Joseph further stated that they would be armed with various firearms, including a fully automatic M16 and a fully automatic MAC10 with a silencer.  Joseph indicated that they would abandon one car and use a second car, a minivan, to escape.  In passing, Joseph had told Flores that he had committed another robbery in which the car had broken down, and that they had carjacked another automobile in order to flee the scene of the robbery.

Prior to the robbery, Joseph and Flores drove to the rest stop to scout the location.  At this point, Joseph introduced Flores to Petitioner Jose Soto, and according to Flores' testimony at trial, Joseph indicated that Petitioner would participate in the heist and that Petitioner had committed robberies with them in the past.[3]

---

[3] Although Petitioner did not testify at the trial, he indicated in his brief that initially he was not interested in the armored car robbery and declined to participate.  (Pet. Br. at 6.) Petitioner claims that Flores personally induced him on at least two occasions, August 24 and 30, 1998, to participate in the armored car robbery.  (Pet. Br. at 6.)  These claims are consistent with Petitioner's assertion of an entrapment defense at trial.

Joseph eventually called off the robbery on its scheduled date.  The FBI instructed Flores to tell Joseph that he should store the weapons at Flores' apartment, in order to ensure that Joseph and the others would go through with the robbery.  According to Petitioner, after Flores and Charles set a new robbery date, Flores "yelled and cursed" at Joseph and Petitioner in an attempt to reinstate the agreed upon plan.[4]

On September 1, 1998, Joseph, Charles and Petitioner arrived at Flores' apartment, where they had stored guns the night before.  The weapons stashed included a MAC10 with a silencer and the M16, as well as magazines, ammunition, and other items for the robbery.  After setting the getaway car in place, Flores drove the group to the Walt Whitman rest stop, the anticipated location of the armored car.  The three men were heavily armed with various guns and ammunition.

Flores began to park in a particular spot, as the FBI had instructed him.  One of the men noticed someone looking at them through the window of a building at the rest stop, and Charles ordered Flores to drive to the other side of the rest stop.  When FBI agents saw a gun that appeared to be an assault rifle pointed at them though the rear window of the car, the agents fired their guns at the car.  Petitioner retreated from the car and attempted to enter the main rest stop building, but he and the other men were apprehended by the FBI.

## PROCEDURAL HISTORY

On March 19, 1999, a federal grand jury in the District of New Jersey charged Petitioner, and the Rodriguez brothers with various offenses in an eleven count indictment.  (Petitioner's

---

[4] Petitioner's contention that Flores reinstated the plan is essential to his argument that the plan had been abandoned.

4

Brief ("Pet. Br."), at 2-3; Exhibit B to Respondent's Brief ("Resp. Br.")).  Petitioner was named

in nine of the eleven counts (Pet. Br. at 2; Ex. B to Resp. Br.), but the three counts relevant to the

instant petition are: (1) conspiracy to commit bank robberies and the robbery of an armored car,

in violation of 18 U.S.C. § 371 (Count 1); (2) using and carrying firearms during the conspiracy

and the attempted armored car robbery, in violation of 18 U.S.C. § 924(c)(1) (Count 8); and (3)

felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1) (Count 11).[5]  (Pet. Br. at 2-

3; Ex. B to Resp. Br.)

  On March 23, 1999, Petitioner entered a not guilty plea to all charges, and proceeded to

trial.  (Pet. Br. at 3.)  On July 9, 1999, the jury returned a verdict convicting Petitioner of: (1)

conspiracy to commit bank robberies and the robbery of an armored car; (2) attempted robbery of

an armored car; (3) use of an automatic weapon during the attempted robbery; and (4) possession

of a firearm by a felon.  (Pet. Br. at 3; Ex. C to Resp. Br.)  On March 30, 2000, this Court

sentenced Petitioner to a total term of imprisonment of 447 months.  (Pet. Br. at 3.)

  On April 7, 2000, Petitioner filed a pro se Notice of Appeal with the District Court.  (Pet.

Br. at 3.)  On December 5, 2002, the Third Circuit Court of Appeals affirmed the decision of the

District Court.  (Pet. Br. at 4.)  On May 5, 2003, the Supreme Court of the United States denied

Petitioner's application for a writ of certiorari.  (Pet. Br. at 4.)

---

[5] Petitioner also was charged with: bank robbery (Corestates), in violation of 18 U.S.C. §
2113(a) and (d) (Count 2); use of a firearm during the commission of a bank robbery
(Corestates), in violation of 18 U.S.C. § 924(c)(1) (Count 3); use of a firearm during the
commission of a bank robbery (Commerce), in violation of 18 U.S.C. § 924(c)(1) (Count 5);
carjacking, in violation of 18 U.S.C. § 2119 (Count 6); and obstruction of commerce by
attempted robbery of an armored car, in violation of 18 U.S.C. § 1951(a) (Count 7).  (Pet. Br. at
2-3; Ex. B to Resp. Br.)

On August 8, 2004, Petitioner filed a petition to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, and on December 7, 2004, Respondent answered the petition.  On March 1, 2005, Petitioner filed a reply.

## LEGAL STANDARDS

### I.    28 U.S.C. § 2255

Section 2255 allows a prisoner in custody to file a petition for a writ of habeas corpus with the sentencing court on the grounds that: (1) the imposed sentence violated the United States Constitution or laws; (2) the court did not have jurisdiction; (3) the sentence exceeded the maximum allowed by law; or (4) the sentence is subject to collateral attack on other grounds. See 28 U.S.C. §2255.  "[A] motion to vacate [a] sentence under 28 U.S.C. § 2255 is addressed to the sound discretion of the district court."  United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980).

### II.    Collateral Review

Habeas corpus does not encompass all sentencing errors because it is not a substitute for direct appeal.  See Reed v. Farley, 512 U.S. 339, 354 (1994); United States v. Addonizio, 442 U.S. 178, 184 (1979).  Errors that justify reversal on direct appeal may not necessarily be sufficient to support collateral relief.  See Addonizio, 442 U.S. at 184.

Where a prisoner fails to "raise his claim on direct review, the writ [of habeas corpus] is available only if the [prisoner] establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"  Reed, 512 U.S. at 354.  "To show cause, a petitioner must establish that 'some external impediment' prevented him from raising the claim," such as interference by officials, the unavailability of evidence at the time, or ineffective counsel.  Wise

6

v. Fulcomer, 958 F.2d 30, 34 (3d Cir. 1992) (quoting McCleskey v. Zant, 499 U.S. 467, 497 (1991)).  "Prejudice exists where 'errors at trial . . . worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Wise, 958 F.2d at 34 (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).

Alternatively, where a prisoner has raised his claim on direct review and lost, collateral relief is available under § 2255 when the claimed error of law constitutes "a fundamental defect which inherently results in a complete miscarriage of justice."  Addonizio, 442 U.S. at 185.  As such, the error must be fundamental and present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."  Davis v. United States, 417 U.S. 333, 346 (1974).

This Court has the discretion to decline to address issues in petitioner's collateral attack that were addressed to the Third Circuit Court of Appeals on direct appeal.  See United States v. Orejuela, 639 F.2d 1055, 1057 (3d Cir. 1981) (stating that "[o]nce a legal argument has been litigated and decided . . . it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255").

## DISCUSSION

Petitioner asserts that his sentence should be vacated for three reasons.  First, Petitioner contends that, under 18 U.S.C. § 924(c), this Court erred by failing to instruct the jury that an essential element of the offense of carrying a machine gun, in furtherance of a violent crime, is that the defendant had knowledge of the weapon in his possession.  Petitioner also contends that this Court erred when it failed to suppress the testimony of Fernando Flores.  Finally, Petitioner claims that he was deprived of his Sixth Amendment right to counsel by counsel's ineffective

assistance.  This Court will address each of the grounds on which Petitioner seeks to vacate his sentence below.

## I.     Collateral Review

Petitioner's first two claims, concerning the jury instructions and the admission of Flores' testimony at trial, do not merit collateral review and cannot support the relief requested under § 2255.  Accordingly, they are treated together below.

### A.     Jury Instructions at Trial

Petitioner claims that his sentence should be vacated because this Court failed to instruct the jury that a defendant's knowledge of the nature of the weapon in his possession is an essential element of a conviction, pursuant to 18 U.S.C. § 924(c).  The crux of his argument is that there is "a long standing common law tradition that laws carrying severe penalties inherently contain a mens rea requirement."  (Pet. Br. at 28) (quoting Staples v. United States, 511 U.S. 600, 616-17 (1994)).  Petitioner contends that the Government needed to prove that: (1) the two machineguns were in fact fully automatic weapons (and thus, "machineguns" under federal law), and (2) the defendants knew they had machineguns in their possession.[6]  Petitioner argues that this Court's instructions to the jury, which failed to inform jury members that Petitioner must have had knowledge that he had a machinegun in his possession in order to convict, resulted in prejudice.

---

[6]  Here, the jury determined that the two machineguns were in fact fully automatic weapons (and thus "machineguns" under federal law).  The Court submitted a special verdict form to the jury.  (Ex. C to Pet. Br.)  The form required the jury, if and when they convicted on Count 8, to determine whether either or both of the two weapons in question were in fact machineguns.

He contends that "no rational juror could find [him] guilty beyond a reasonable doubt based upon the evidence presented against him at trial." (Pet. Br. at 31.)

Although Petitioner did not raise this issue on direct appeal, he believes that it has been preserved by incorporation and adoption of the issues raised by his co-defendant, Joseph Rodriguez, upon direct review before the Court of Appeals. Petitioner further believes that the harmless error analysis that the Court of Appeals applied to that claim should not apply to him, because the machine gun that was equipped with a silencer did not belong to him.[7]

Respondent argues that this Court's initial determination – that Petitioner's knowledge of the nature of the weapon in his possession was not an essential element of a conviction, pursuant to 18 U.S.C. § 924(c) – should stand because nothing has occurred to cast doubt on the previous ruling. Additionally, Petitioner failed to challenge the jury instruction on direct review, and because he cannot show cause for this failure, or actual prejudice, he should be precluded from raising the claim in a § 2255 petition. Finally, to the extent this Court accedes to Petitioner's assertion that he joined Joseph Rodriguez in this particular claim on direct appeal, the Court of Appeals' harmless error analysis was broad enough to encompass Petitioner.

This Court rejects Petitioner's claim for two reasons. First, Petitioner failed to challenge the jury instruction on direct appeal, and has not demonstrated the requisite cause and prejudice to merit collateral review of this claim. Second, even if this Court assumed that Petitioner had

---

[7] Petitioner asserts, in the context of this claim, that the conspiracy count was invalid because he was convicted under a Pinkerton theory of liability. (Pet. Br. at 25.) As Respondent correctly points out in its brief, however, the Government never argued such a theory to the jury. The Court also never instructed the jury that Pinkerton liability was at issue. Most important, the guns found by authorities were not imputed to the defendants at trial under a Pinkerton theory of liability. This claim lacks merit.

raised the issue on appeal because his co-defendants had raised the issue on appeal, Petitioner still has not shown that, having failed to obtain a favorable ruling from the Court of Appeals, he should not be bound by the disposition of that claim or that he now can seek collateral review of this claim.

If a defendant fails to raise his claim on direct review, he waives his right to raise the issue for collateral review, unless he can establish "cause" for his failure to raise the issue previously, and that actual prejudice resulted from the alleged violation.  Reed, 512 U.S. at 354.

To show cause, a petitioner must demonstrate that "some external impediment" prevented him from raising the claim, such as interference by officials, the unavailability of evidence at the time, or ineffective counsel.  See Wise, 958 F.2d at 34.  Petitioner does not assert a reasonable explanation, anywhere in his petition, for failing to raise this claim on direct appeal.  Petitioner apparently decided not to raise this issue on appeal because Joseph Rodriguez challenged this Court's determination of the elements of a § 924(c) offense, but a co-defendant's decision to raise an issue on appeal is not an "external impediment" that prevented a petitioner himself from raising the claim on direct appeal.

 Even if Petitioner had established cause, however, his claim would not merit collateral review because he failed to establish actual prejudice.  The Third Circuit Court of Appeals directly addressed Joseph Rodriguez's conviction with respect to the issue of knowledge under § 924(c).  It agreed with the government's position that "even if [appellants] did not know that one of the guns involved was a machinegun, [they] cannot deny knowledge that the other was equipped with a silencer as it was plainly affixed to the gun when they brought it to the rest

10

stop."  United States v. Rodriguez, 54 Fed. Appx. 739, 747 (3d Cir. 2002).  Accordingly, Petitioner has not shown actual prejudice likely resulted from the alleged legal error.

Finally, even if this Court assumed that Petitioner, by way of his co-defendant's appeal, raised this claim previously, he has not demonstrated why this Court should overlook the Court of Appeals' resolution of this claim.  Rodriguez did not prevail on this claim on appeal, and it is unclear why Petitioner should be able to claim that he raised it earlier without being bound by its resolution.  If Petitioner seeks to stand in Rodriguez's shoes, he must confront the fact that Rodriguez lost this claim, and could not seek collateral review absent a showing that such error amounted to a "fundamental defect" that resulted in a "complete miscarriage of justice."  See Addonizio, 442 U.S. at 185.  Petitioner has not made such a showing, and thus, this basis for relief is rejected.

 B.  Testimony of Fernando Flores

Petitioner contends that his conviction must be reversed because this Court erred by failing to suppress the testimony of Fernando Flores.  Petitioner believes that Flores' testimony was secured in violation of 18 U.S.C. § 201(c)(2) and the New Jersey Rule of Professional Conduct 3.4(b).  Even though Petitioner did not include this argument in his § 2255 petition and offered it only in reply to Respondents' brief, he believes that he can properly raise this issue at this time, because it was raised on appeal by one of his co-defendants, Charles Rodriguez.  This Court cannot agree with this proposition.

Petitioner must not be allowed at this stage in the litigation to assert a new claim in a reply brief.  First, Petitioner received an order from this Court on May 10, 2004, pursuant to United States v. Miller, 197 F.3d 644 (3d Cir. 1999), which informed Petitioner that he could

have his pleading ruled upon as filed, or he could amend his pleading by filing an all inclusive §

2255 petition, subject to the one year statute of limitations.  The Order granted Petitioner a 45-

day period within which to advise the Court of any amendments to his petition.  On August 8,

2004, Petitioner filed a petition to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C.

§ 2255.  In light of these facts, this Court does not believe it is necessary to expend time and

resources on a position that Petitioner neglected to address in his § 2255 petition, when clearly he

was informed by this Court that he should include "all potential claims for which he desire[d] to

seek review and relief" in his petition.  (May 5, 2004 Order.)  Petitioner has not provided a

reason not complying with this Court's Miller Order.

   In addition, Petitioner should not be allowed to augment his petition substantially on

reply, by the stroke of one sentence.  Without further elaboration, Petitioner simply states that

"Defendant Soto most respectfully incorporates those arguments by reference."  (Pet. Reply to

Resp. Br. at 13) (referring to the arguments that his co-defendant, Charles Rodriguez, raised on

appeal.)

   Basic fairness requires that an opposing party have a fair notice of his adversary's claims,

as well as an opportunity to address those claims.  This Court need not address the merits of

undeveloped and unsupported claims like the instant one.  See generally United States v. Irizarry,

341 F.3d 273, 306 n.20 (3d Cir. 2003) (rejecting claims that are "simply undeveloped

assertions"); see United States v. Smallwood, 188 F.3d 905, 914 (7th Cir. 1999) (same).

Respondent was denied an opportunity to respond because Petitioner failed to raise this claim in

his petition, and offered it only in his reply brief.

For all of these reasons, this Court concludes that Petitioner's claim, raised at the eleventh hour, does not merit collateral review.

## II.   <u>Ineffective Assistance of Counsel</u>

Petitioner claims that his sentence should be vacated because the ineffective assistance of counsel deprived him of his Sixth Amendment right to effective assistance of counsel.[8] Petitioner contends that counsel's assistance was ineffective because his attorney failed to: (1) conduct an investigation into his previous homicide conviction, which was relevant to his entrapment defense; (2) challenge the indictment on the ground that the conspiracy count was defective; (3) challenge the conspiracy conviction on the basis of insufficiency of evidence; and (4) challenge Petitioner's sentence as exceeding the statutory maximum authorized under 18 U.S.C. § 924(c)(1).

To establish a claim of ineffective assistance of counsel, a defendant must prove that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome of the proceeding.  See <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Judicial scrutiny of counsel's performance must be highly deferential.  See <u>id.</u> at 689.  In determining whether assistance of counsel has been ineffective, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  <u>Id.</u>

---

[8] Although Petitioner failed to raise this issue on direct review, he is not precluded from doing so on collateral review.  See <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003) (holding that an ineffective assistance of counsel claim may be brought in a collateral proceeding under 28 U.S.C. § 2255, whether or not the petitioner could have raised the claim on direct appeal).

If a defendant fails to satisfy one prong of the <u>Strickland</u> test, it need not consider the other.  <u>Id.</u> (holding that there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one).  Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  <u>Id.</u>

For the following reasons, this Court concludes that Petitioner has not established a claim of ineffective assistance of counsel.

A.    <u>Failure to Investigate Prior Conviction</u>

Petitioner asserts that counsel's failure to perform an investigation into his prior conviction for involuntary manslaughter amounts to ineffective assistance of counsel, because this shortcoming resulted in an unsuccessful entrapment defense.[9]  The affirmative defense of entrapment requires a defendant to show: (1) that he was induced by law enforcement agents to commit the crime charged; or (2) that he was predisposed to commit the crime charged.  (Tr. 4260) (setting forth this Court's instruction to the jury on the affirmative defense of entrapment).  Petitioner contends that, if his attorney had performed a proper investigation into his prior conviction, she would have determined that it was inadmissible, and could have precluded the Government from using it as evidence of a predisposition to commit a crime.

In addition, Petitioner argues that, if counsel had investigated the nature and circumstances of his conviction and had provided this information to the jury, any reasonable

---

[9] In prior criminal proceedings, Petitioner was charged with aggravated assault after he punched another person in the face, and the victim, who fell to the pavement, struck his head and died 15 days later.  (Pet. Br. at 14.)  Petitioner subsequently pled guilty to involuntary manslaughter.  (Pet. Br. at 14.)

juror would have recognized that a conviction for a prior, unintentional violent crime does not establish a predisposition on his part to commit the offense of attempted armored car robbery. He makes this claim notwithstanding Petitioner's initial assertion that this information would have been inadmissible. Petitioner asserts that his attorney's failure to investigate his previous manslaughter conviction demonstrates that her performance fell below a reasonable standard and that, had a pretrial investigation been conducted, there is a reasonable probability that the outcome of his case would have been different.

Respondent contends that Petitioner cannot establish a claim of ineffective assistance of counsel because he has failed to establish prejudice resulting from his attorney's alleged error. First, Respondent contends that Petitioner's prior conviction was admissible, and thus, Petitioner has not established that his attorney could have succeeded in preventing his prior conviction from becoming a part of the record. Second, Respondent contends that to the extent Petitioner asserts that his attorney should have provided the jury with information about his conviction for involuntary manslaughter, the jury actually was given this information at trial, and it is unlikely that the jury would have rendered a different verdict.

This Court agrees. Petitioner cannot establish a claim of ineffective assistance of counsel based on these assertions because he cannot demonstrate prejudice flowing from the alleged failure of counsel to investigate his prior conviction. Under Strickland:

> In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments . . . . [T]he appropriate test for prejudice [requires] . . . defendant [to] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination whether the

specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law. . . . The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision.  [A court hearing an ineffectiveness claim] must consider the totality of the evidence before the judge or jury.   Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.

466 U.S. at 691, 694-96.

With respect to Petitioner's first claim – that had counsel investigated the circumstances of his prior conviction, she would have succeeded in preventing prosecutors from introducing his prior conviction at trial – Petitioner has provided no supporting case law or other legal authority. Petitioner has not pointed to a basis for concluding that a prior conviction for an involuntary homicide, as opposed to voluntary manslaughter, necessarily would have precluded Respondent from offering the conviction into evidence at trial to rebut his entrapment defense.  This Court's own search also yielded no supporting authority.  Thus, it appears that counsel's failure to seek preclusion of Petitioner's prior conviction altogether does not fall below an objectively reasonable standard for attorney performance.

Petitioner's second theory presupposes that had counsel investigated his prior conviction, counsel would have learned that it was an involuntary manslaughter and so informed the jury; however, it is clear that the jury actually had learned about the nature of his prior conviction. (Resp. Br. at 5-6; Tr. 3946, 4031.)  Counsel for both Respondent and Petitioner made statements to the jury indicating that the Petitioner had been convicted of recklessly causing the death of another man.  Indeed, Petitioner's counsel during her closing stated emphatically to the jury that:

16

> [a]ccording to the paperwork you will get, they say he recklessly caused the death of [another person].   Recklessly is not intentionally.   That suggests to you that there was no plan or scheme, like in a bank robbery.   This is not a similar type of crime.   It was a reckless act  . . . .   It's not the same or similar offense.   It's not intentional.   It's not planned.   There's no weapons involved.

(Tr. 4031.)   Therefore, Petitioner's contention that the jury had to fend for itself concerning the nature of his offense is inaccurate.   (Pet. Br. at 13-14.)   The jury was informed that his previous conviction was not an intentional crime.   To the extent that Petitioner claims that counsel erred by failing to obtain the information that would have enabled counsel to clarify the nature of his prior conviction to the jury, this claim is unsupported by the record.   (Tr. 4031.)   Petitioner's counsel ostensibly clarified for the jury that Petitioner's prior conviction was not related to an intentional crime.

        To prevail on a claim of ineffective assistance of counsel, a petitioner must show objectively unreasonable conduct and resulting prejudice, i.e., that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   Here, Petitioner has not shown either unreasonable conduct or prejudice.   Rather, Petitioner's argument is conclusory and speculative in nature, and fails to show that counsel made errors so serious that her representation resulted in an unreliable or fundamentally unfair proceeding.

        B.        Failure to Move the Court to Rule that Indictment for Conspiracy Was Defective

        Petitioner also asserts that counsel's failure to object or move the Court on the ground that Count 1 of the indictment charging conspiracy was defective constitutes ineffective assistance of

17

counsel.[10]  Petitioner specifically argues that Count 1, which charged Petitioner with a dual object conspiracy to rob banks and an armored car, was deficient for three reasons.  First, Petitioner asserts that there is not enough evidence in the record to sustain the charged conspiracy, and that his attorney's failure to challenge the conspiracy charge on this ground was objectively unreasonable.  Second, Petitioner contends that the fact that he was acquitted on the substantive bank robbery charges means that Respondent proved the existence of two separate conspiracies, not a single conspiracy with two unlawful objectives.  According to Petitioner, counsel's failure to raise these arguments during the trial constituted ineffective assistance of counsel.  Third, Petitioner contends that there was a variance between the conspiracy charged in the initial indictment and the later indictment, which was not placed before the grand jury.  Counsel was ineffective by failing to challenge this variance.

Respondent, on the other hand, argues that there was sufficient evidence in the record to warrant Petitioner's conviction, and to support the jury finding of a single conspiracy.  In addition, Respondent contends that there is no variance between the conspiracy charged in either the initial or superseding indictment.  Further, it is the Government's contention that, even if such a variance existed between the indictments, Petitioner suffered no prejudice from that discrepancy.

This Court rejects Petitioner's three arguments advancing his ineffectiveness of counsel claim.

---

[10] Although it is not clear what Petitioner believes his counsel should have done at trial, it appears that Petitioner wanted his attorney to move for a judgment of acquittal, pursuant to FED. R. CRIM. P. 29.

    1.    <u>Insufficiency of Evidence</u>

Petitioner appears to argue that counsel should have moved this Court for acquittal, pursuant to FED. R. CRIM. P. 29, on the basis that the evidence was insufficient to support a conviction.  In light of the evidence at trial and the Rule 29 standard, the decision not to file a Rule 29 motion on this basis fell within an objective standard of professional assistance, and fails to establish a basis for relief under § 2255.

> In ruling on a motion for judgment of acquittal made pursuant to FED. R. CRIM. P. 29, a district court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilty [sic] beyond a reasonable doubt based on the available evidence.'"

<u>United States v. Brodie</u>, 403 F.3d 123, 133 (3d Cir. 2005) (internal citations omitted).  A finding of insufficiency should be "confined to cases where the prosecution's failure is clear."  <u>Id.</u> (internal citations omitted).

In the matter <u>sub judice</u>, there was ample evidence upon which the jury could have convicted Petitioner on Count 1, conspiracy to commit bank robberies and the robbery of an armored car, as required by the indictment.  Petitioner confessed on tape to his involvement in the attempted armored car robbery.  His confession implicated him in a conspiracy with the Rodriguez brothers.

In addition, there is evidence to suggest that the Petitioner may have been involved in the previous bank robberies charged.[11]  Petitioner's prior conviction, as well as his association with the Rodriguez brothers in a similar type of criminal venture, served as an adequate basis for

---

[11] More than two males were involved in both bank robberies, and Flores testified at trial that Joseph Rodriguez had indicated to him on one occasion that Petitioner had participated in past robberies with Joseph.

allowing a jury to make a finding of guilt on Count 1 of the indictment.  This is certainly not a

case where the prosecution's failure to provide sufficient evidence was clear, as would be required

to justify the filing of, and to prevail upon, a Rule 29 motion.

Accordingly, the decision by Petitioner's counsel not to seek a judgment of acquittal on

the basis that the evidence was insufficient to support a conviction, fell within an objective

standard of reasonable professional assistance.  Because Petitioner has failed to meet the first

prong of the Strickland test, this Court does not need to determine whether Petitioner suffered

prejudice as a result of counsel's assistance.

### 2.  Constructive Amendment of the Conspiracy Count at Trial

Petitioner argues that he was prejudiced unfairly by his attorney's failure to move before

this Court on the ground that there was a variance between the single conspiracy charged in the

indictment and the evidence at trial demonstrating multiple conspiracies.  Petitioner's

ineffectiveness of counsel claim is without merit because the decision to refrain from filing a

motion seeking relief based on a variance between the indictment falls within the range of

reasonable professional assistance.

As a general matter, "[a] conviction must be vacated when (1) there is a variance between

the indictment and the proof presented at trial and (2) the variance prejudices a substantial right of

the defendant."  See United States v. Schurr, 775 F.2d 549, 553 (3d Cir. 1985) (citing United

States v. Kelly, 892 F.2d 255, 258 (3d Cir. 1989)).  A single conspiracy exists when there is

evidence of: (1) a common goal among conspirators; (2) an agreement bringing to pass a result

that will not continue without the continuous cooperation of the conspirators; and (3) an overlap

in the various dealing between the participants.  See Kelly, 892 F.2d at 259.  The government

need not prove that each defendant knew all the details, goals, or other participants in order to establish a conspiracy.  See United States v. Theodoropoulos, 866 F.2d 587 (3d Cir. 1989).  A single conspiracy is proven when there is "evidence of a large general scheme, and of aid given by some conspirators to others in aid of that scheme."  United States v. Kenny, 462 F.2d 1205, 1216 (3d Cir. 1972).

In attempting to distinguish a single conspiracy from multiple conspiracies, the Third Circuit Court of Appeals defined multiple conspiracies as "separate networks operating independently of each other."  United States v. Barr, 963 F.2d 641, 648 (3d Cir. 1992) (quoting United States v. Barlin, 686 F.2d 81, 89 (2d Cir. 1982)).  For example, the Court of Appeals for the Third Circuit found two discernible conspiracies when evidence established separate conspiracies consisting of two antagonistic factions that would not have worked together as part of a single scheme.  See United States v. Camiel, 689 F.2d 31 (3d Cir. 1982).

This Court concludes that counsel's decision not to file a motion objecting to the indictment and evidence presented at trial was reasonable, because there was more than adequate evidence on the record to warrant the jury finding of a single conspiracy, as charged in the indictment.  First, Petitioner's confession, as well as Flores' testimony, reflected the defendants' common goal of illegally obtaining money.  Second, there was evidence of a broad agreement to commit armed robberies that would not have continued without ongoing cooperation of the co-conspirators.  Finally, Respondent introduced evidence demonstrating an association between the defendants.  The trial evidence was sufficient to show a large, general scheme to commit armored car robberies, and that Petitioner had aided in that scheme.

Moreover, Petitioner has failed to point to any evidence to support his view that the conspiracy to commit bank robberies was a separate network, operating independently of the conspiracy to rob the armored car.  Unlike the case in Camiel, in which the court could not find a single conspiracy where two rival factions committed various offenses, here, there was a similar cast of characters performing armed robberies, using essentially the same modus operandi.  In each of the charged offenses, the robbers committed quick attacks on the interests of financial institutions.  They were armed with assault weapons and other tactical gear and relied on "switch" cars to make their escape.

The Government was not obligated to prove that Petitioner was aware of the conspiracy's details, goals, or other participants, and it was reasonable for counsel to conclude that Petitioner would not prevail on a Rule 29 motion, if filed, asserting that a single conspiracy was not supported by sufficient evidence.  Therefore, the error alleged by Petitioner's counsel fails to meet the first prong of Strickland.  Counsel's decision not to object falls well within an objective level of reasonable assistance, and Petitioner's claim for relief on this basis is denied.

3.     Variance Between Initial Indictment and Superseding Indictment

Although Petitioner's claim is somewhat unclear, this Court construes Petitioner's claim to be that counsel's failure to object to the variance between the offenses charged in the initial indictment and the second superseding indictment warrants a legal remedy because this failure on the part of his attorney amounted to an ineffective assistance of counsel.  However, Petitioner fails to specify how the two indictments varied from one another.  Indeed, he merely states that "[i]n absence of counsel making the objection and challenge [Petitioner] was denied the right to a grand jury and hampered in his ability to prepare adequately for trial."  He also cites Ex Parte Bain, 121

U.S. 1, 9-10 (1887), for the general rule that the language of an indictment may not be altered or amended except by resubmission to the grand jury.  Petitioner has failed to specify the relevant provisions of the superseding indictment that form the basis of this claim of variance.  This Court need not address the merits of undeveloped and unsupported claims like the instant one.  See generally Irizarry, 341 F.3d 273, 306 n.20; see Smallwood, 188 F.3d at 914.

      C.     Failure to Challenge Conspiracy Conviction on Basis of Insufficiency of Evidence

Petitioner claims that his attorney's failure to challenge his conviction on the basis of insufficient evidence constitutes ineffective assistance of counsel.  Essentially, Petitioner contends that his acquittal for two substantive bank robbery charges is inconsistent with a jury finding of guilt on the count charging conspiracy to commit bank robbery and an armored car robbery, and that his attorney should have raised that issue with this Court.  He also argues that his conviction for conspiracy to commit bank robbery and armored car robbery cannot stand, because the conspiracy to commit bank robberies terminated when its principal purpose, the bank robberies themselves, had been accomplished.  Furthermore, Petitioner believes that the armored car robbery scheme, initiated by the Government through the actions of Fernando Flores, was a new, separate conspiracy that did not implicate bank robbery.  He argues that the Government failed to establish at trial that the original conspiracy to rob banks had, at its inception, an agreement to rob the Loomis armored car, and in the absence of such evidence, his counsel should have raised this issue with this Court.  Because counsel failed to present this challenge on his behalf, Petitioner believes that his conviction and sentence for conspiracy to commit bank robberies and an armored car robbery should be vacated.

Respondent contends that Petitioner's ineffective assistance of counsel claim fails to meet both prongs of the Strickland test.  Respondent argues that there was sufficient evidence presented at trial, such that a reasonable jury could (and did) conclude that Petitioner was guilty of conspiring to commit bank robberies and armored car robbery to stand.  Respondent counters that, even if the jury concluded that Petitioner had nothing to do with the bank robberies charged, Petitioner would not be entitled to relief, because once a person joins a conspiracy after it has begun, he is considered to have adopted, and is bound by, the prior acts made in furtherance of the common objective.  (Resp. Br. at 18) (citing United States v. Sarno, 456 F.2d 875, 878 (1st Cir. 1972), and Nelson v. United States, 415 F.2d 483, 486 (5th Cir. 1969), for this proposition).  Respondent argues that it was unnecessary to establish that the armored car robbery was a part of the original conspiracy in order for the jury to conclude that Petitioner was guilty of participating in the conspiracy charged at Count 1.  (Resp. Br. at 21.)

Further, Respondent asserts that Petitioner's claim is essentially an inconsistent verdicts claim, i.e., Petitioner seeks relief based upon his view that the jury's verdict on at least one count (acquittal on charges of bank robbery) was inconsistent with its verdict on another count (conspiracy to commit bank robbery and armored car robbery).  Respondent argues that the verdicts actually are consistent, and that even if Petitioner's claim were valid, there would be no available legal remedy.  See United States v. Gross, 961 F.2d 1097, 1106-07 (3d Cir. 1990); see also Government of Virgin Islands v. Edwards, 903 F.2d 267, 271 (3d Cir. 1990).

This Court concludes that counsel's failure to challenge the sentence on these grounds did not prejudice Petitioner, because this omission likely did not affect the outcome of the proceeding.  First, there was sufficient evidence to support the jury determination that Petitioner was involved in the conspiracy charged in Count 1.  Second, this Court disagrees with Petitioner's underlying

assertion that his conviction was internally inconsistent (and therefore, that counsel somehow deprived him of his Sixth Amendment right to counsel by failing to raise this issue).

First, the jury could rationally have reached a guilty verdict on the charge of a single conspiracy to commit bank robberies and armored car robbery.  Here, Petitioner's confession, and the evidence of numerous overt acts committed in furtherance of the conspiracy to rob the armored car, provide sufficient evidence for a jury finding of guilt on Count 1.  In addition, Flores' testimony, which indicated that he was informed that Petitioner had help in past robberies, as well as his current association with the Rodriguez brothers, provided the jury with a basis upon which to convict Petitioner.  Based on this record, it was not objectively unreasonable for counsel to refrain from challenging the verdict on conspiracy for lack of sufficient evidence.  Accordingly, Petitioner is unable to satisfy the first Strickland requirement – a showing that counsel's performance fell below an objectively reasonable standard.

Counsel's failure to challenge the sentence on the basis of purportedly inconsistent verdicts also cannot sustain Petitioner's ineffective assistance of counsel claim.  There is no reasonable probability that, had counsel made this challenge, the outcome of the proceeding would have been different.

As a preliminary matter, it was not inconsistent for the jury to conclude that Petitioner was guilty of conspiring to commit bank and armored car robberies and at the same time decide that Petitioner had not committed one of the objects of the conspiracy – bank robbery.   A guilty verdict on a charge of conspiracy is not susceptible to being vacated simply because evidence supporting conviction as to one of the objects of the conspiracy is lacking (assuming such objects are charged as substantive counts of an indictment).  See Griffin v. United States, 502 U.S. 46 (1991).

In addition, to the extent that this Court may conclude that the jury verdict somehow was internally inconsistent, inconsistent verdicts are often "a product of jury lenity."  Gross, 961 F.2d at 1107 (quoting Powell, 469 U.S. at 65).  Indeed, an inconsistency between an acquittal and a guilty verdict in a criminal case does not require a reversal of the conviction.  See United States v. Powell, 469 U.S. 57, 65; United States v. Gross, 961 F.2d 1097, 1106-07 (3d Cir. 1992); Government of Virgin Islands v. Edwards, 903 F.2d 267, 271 (3d Cir. 1990).  Thus, even if this Court were to agree with Petitioner that an inconsistency existed, and furthermore, that it was objectively unreasonable for counsel to fail to present this issue for this Court's consideration, Petitioner has not persuaded this Court that he can establish prejudice, because inconsistent verdicts do not result necessarily in reversal of a conviction.

Petitioner cannot establish that he was prejudiced by counsel's failure to seek relief, based on a theory of inconsistent verdicts; as such, he cannot rely on this ground to prevail on his claim of ineffective assistance of counsel.

      D.      Failure to Challenge Sentence under 18 U.S.C. § 924

Petitioner alleges that his counsel's failure to challenge his sentence under 18 U.S.C. § 924(c)(1) amounted to ineffective assistance of counsel because his 30 year sentence on Count 8, for using and carrying firearms during the conspiracy and the attempted armored car robbery, exceeded the maximum sentence authorized by the statute.  Petitioner specifically states that "[c]ounsel did not challenge or object to petitioner's sentence of 360 months for violation of 18 U.S.C. § 924(c)(1), when under statute in existence at time statutory maximum was not less than 7 yrs." (Pet. Mot. at 5.)  Petitioner does not elaborate further upon the specifics of his claim.[12]

---

[12] Petitioner refers to this basis for his ineffective assistance of counsel claim in the Summary of Arguments section of his brief, but never provides a more detailed legal analysis of his claim in his petition.  (Pet. Br. at 11.)  He only recites the issue again in his reply as one of four independent grounds upon which he is entitled to an evidentiary hearing.  (Reply at 1, 3.)

Respondent contends that Petitioner's failure to develop this particular basis sufficiently for his ineffective counsel claim essentially amounts to a waiver of the claim, and this Court need not address it.  (Resp. Br. at 25.)

This Court agrees.  The "claim" amounts to one sentence, without further elaboration. This Court need not address the merits of a claim that is undeveloped and unsupported.  See generally Irizarry, 341 F.3d at 306 n.20; see Smallwood, 188 F.3d at 914.  This Court believes that the instant claim advanced by Petitioner is not sufficiently developed for the Court to resolve it.[13] Accordingly, to the extent Petitioner relies on this basis for relief, the claim is denied.

## CONCLUSION

For the foregoing reasons, this Court finds that the instant motion filed by Petitioner seeking to vacate his sentence, pursuant to 28 U.S.C. § 2255, does not present a claim that merits his sentence to be vacated, set aside or corrected.  Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.  Accordingly, his motion is denied.


DATED:  November 15, 2005

        S/Joseph A. Greenaway, Jr.
        JOSEPH A. GREENAWAY, JR., U.S.D.J.

---

[13] Respondent also presents additional bases for rejecting this claim.  Although this Court need not reach the merits of these defenses, it is worth noting that Respondent argues that Petitioner: (1) relies on the wrong statute and, in any event; (2) misreads the statute on which he relies as setting forth a statutory maximum, when in fact it establishes a statutory minimum.